CHARLES MILLER, appellant,

*v.*

THE HILLSBOROUGH MUTUAL FIRE ASSURANCE
ASSOCIATION, respondent.

A policy of insurance in a mutual insurance company recited that, in consideration of the premium paid, the company should be liable according to the terms of the constitution, by-laws and conditions to make good all damage or loss by fire during the time specified. Annexed to the policy were a number of by-laws denominated "conditions of insurance."—*Held*, that the holder of the policy is entitled to have the policy reformed so that it shall be subject to such by-laws only as were so annexed.

On appeal from a decree advised by the Chancellor, whose opinion is reported in *Miller* v. *Hillsborough Insurance Co., 15 Stew. Eq. 459;* and also from a decree advised by Vice-Chancellor Bird, on a demurrer to the amended bill, who filed the following conclusions :

The history of this case, in detail, appears in the opinion of Chancellor Runyon, filed February 17th, 1887 (*15 Stew. Eq. 459*), with the exception of one allegation, which has since been made by an amended bill. That additional allegation is, in substance, that the defendant company issued a policy of assurance with several important conditions annexed thereto; that that policy was afterwards (February 22d, 1882,) assigned to the complainant, and that from April 1st, 1882, to November 28th, 1883, the premises (a dwelling-house) remained unoccupied; that while so unoccupied he was twice assessed and twice paid assessments, and that, on the said 28th day of November, 1883, the said premises were consumed by fire ; and that said company refuse to pay the value of said loss on the ground that said house was unoccupied, one of the conditions, as expressed in the by-laws of said company, being that the assured forfeits all right to any assurance if he suffers the premises assured to remain unoc-

cupied, and this last condition or by-law was not one of the conditions so as aforesaid annexed to and made part of the policy of assurance ; and that thereby, *i. e.*, by annexing several conditions to the policy, and not annexing one so important and vital, the complainant was deceived and misled and defrauded ; that is, by presenting a policy with certain conditions annexed, he was assured in the law, if not in fact, that those were the only conditions, and that, in truth, he accepted the assignment of said policy and had the said assignment approved by the secretary of the company, with the full understanding, conviction and belief that the said condition so as aforesaid annexed to the said policy were the only conditions imposed upon any of the members of said company, and that, up to the time of said loss, he did not know of any other condition, or that one condition was that said dwelling should be occupied in order to secure a recovery.

The Chancellor decided, in very plain terms, that no one of the officers of the company could bind the company in such case. But the complainant now seeks to go a step further, and to overcome the views of the Chancellor by alleging that the company itself, in issuing such a policy (with only a portion of the conditions annexed), committed a fraud upon every innocent holder.

But on this very point the Chancellor has provided an answer, very complete, and which, I think, is undisputed law everywhere, by declaring that every policy-holder in such company (being a mutual insurance company) is presumed to know the by-laws and conditions of assurance in the company. This being the law, it certainly applies to this case, in which the complainant held the policy so assigned to him from February 22d, 1882, to November 28th, 1883, during which period he had the amplest opportunity to learn all about the rights and liabilities of the insured, and the conditions upon which his rights could be made secure. Clearly it is not for me to review the Chancellor. Clearly, also, the law is that the complainant is presumed to have known all of the conditions and by-laws on which mutual assurance

15

companies issue their policies. I must sustain the demurrer, with costs.

*Mr. George S. Grosvenor,* for appellant.

*Mr. John D. Bartine,* for respondents.

The opinion of the court was delivered by

VAN SYCKEL, J.

In February, 1881, the defendants issued a policy of insurance on certain buildings therein described to one Runkle Rea.

In February, 1882, Rea sold the premises to the complainant and assigned to him the policy of insurance, which assignment was approved by the company.

The policy recited that the said insurance company, in consideration of the premium paid, should be subject and liable, according to the terms of the constitution, by-laws and conditions, to pay, make good and satisfy unto the said Rea, his heirs, executors, administrators or assigns, all such damage or loss which might happen by fire to said property during the time therein specified, not exceeding the sum of $1,500.

At the end of this policy, under the words, "Conditions of insurance," the 12th, 15th, 16th, 17th, 18th, 19th, 25th, 32d, 37th, 40th, 43d, 44th, 45th and 46th by-laws were set forth in full, and also the supplement to the charter requiring notice of assignment of the policy to make the company liable to such assignee.

The dwelling-house, one of the buildings insured, having been destroyed by fire in November, 1883, the assignee sued at law to recover his loss.

The company set up in its defence by-law 33, not annexed to said policy (which by-law provides that no policy shall be valid against the company where a dwelling-house remains unoccupied more than thirty days), and averred that said dwelling-house had been left unoccupied for more than thirty days next before the said fire. The complainant's bill is filed to reform the policy,

Miller *v.* Hillsborough Fire Assurance Association.

so that it shall be subject only to the by-laws appended to it, and to restrain the company from setting up the thirty-third by-law in bar of the suit at law. The case is here on demurrer to the complainant's bill. The contract of insurance was between the company and Rea. One of its terms was that Rea might, with the company's assent, assign and transfer his interest in it.

At the time of such transfer, Miller, the assignee, was a stranger to the contract, and it is therefore not intended to be conceded that he was chargeable with knowledge of the charter and by-laws of the company. Nor is it admitted that a mutual insurance company can vary the terms and conditions of the policy it issues to the assured by setting up an undisclosed by-law, of which the assured, in fact, had not notice.

In this case, in the body of the policy, the insurance is made expressly subject to the constitution, by-laws and conditions of the association. Under this language, in the absence of any qualification, every by-law of the company entered into and became a part of the contract of insurance, whether known to the insured and his assignee or not.

But the annexation to the policy of a number of by-laws, denominated therein, "Conditions of insurance," justified the assignee in presuming that no by-law other than those so set forth could affect his rights under the policy. I think it is manifest that any one taking the policy would have assumed that there was no undisclosed by-law by which the security could be impaired.

The complainant had a right to act upon that understanding of the instrument, and if he did so, as alleged in the bill, without notice of the thirty-third by-law, it will be inequitable to permit the company to avail itself of the defence which has been interposed.

The complainant has a right to such a contract as the company held out to him, in the notice annexed to the policy, he would have by virtue of the assignment from Rea with the approval of the company.

The language of the policy makes the insurance subject to all the by-laws, including the thirty-third, and if the rights of the

parties are interpreted according to the express terms of the policy, the complainant is remediless. It is not necessary to consider whether the complainant in the suit at law may successfully invoke the doctrine of estoppel against the insurer. The company having set up the thirty-third by-law in bar, the complainant had a right to suspend litigation in the law court, and go into a court of equity to ascertain whether he shall not have a policy which in terms is free from that by-law.

He is entitled to have a contract of insurance subject to such conditions only as are annexed to the policy, so that he may go into a court of law and be secure in his standing upon the expressed terms of his agreement. It is not a sufficient answer to the complainant to say that he may be able to establish an estoppel—he has the right to a contract—which will protect him. That relief can be obtained only in a court of equity by reforming the policy. He asks here for such a policy as he should have, and that cannot justly be withheld from him. He has the right to a contract of insurance upon the terms of which he may rest, if the allegations of his bill are true ; and he should not be left in a position where, in a court of law, he must establish his right to recover by showing the contract to be variant from the terms in which it is set out.

The decree below should be reversed.

*Decree unanimously reversed.*